# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of John Wesley Locklair, III, Respondent.

Appellate Case No. 2016-001754

---

Opinion No. 27686
Submitted November 18, 2016 – Filed December 7, 2016

---

## DISBARRED

---

Lesley M. Coggiola, Disciplinary Counsel, and Julie K. Martino, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

John Wesley Locklair, II, of Columbia, *pro se*.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to disbarment with conditions as set forth later in this opinion.  He requests that disbarment be imposed retroactively to March 6, 2015, the date of his interim suspension.  *In the Matter of Locklair*, 411 S.C. 627, 769 S.E.2d 675 (2015).   We accept the Agreement and disbar respondent from the practice of law in this state retroactively to the date of his interim suspension.  The facts, as set forth in the Agreement, are as follows.

## Matter I

On May 20, 2013, respondent was appointed to represent Client A who had been charged with first degree burglary in May 2011.  A jury trial was held in October 2013 and Client A was found guilty and sentenced to life without parole pursuant to the "three strikes" law.

On November 8, 2013, respondent field a Notice of Intent to Appeal in the South Carolina Court of Appeals. On November 13, 2013, the Clerk of the Court of Appeals notified respondent that his Notice of Appeal was deficient because the sentencing sheet was not attached and the lower court case number was incorrect. The Clerk gave respondent ten days to correct the errors. Respondent did not respond to the Clerk's letter.

On March 6, 2014, the Chief Judge of the Court of Appeals issued an order directing respondent to correct the errors in the Notice of Appeal within ten days or appear before the Court of Appeals on March 20, 2014, to explain why he had not complied. Fourteen days later, respondent submitted an Amended Notice of Appeal to the Court of Appeals.

On July 11, 2014, the Chief Appellate Defender of the Division of Appellate Defense wrote respondent to notify him that his office would take over representation of Client A if respondent desired. The Chief Appellate Defender requested respondent either send him a copy of the order of appointment or notice that he planned to continue to pursue the appeal on behalf of Client A.

On July 20, 2014, Client A filed a complaint with ODC complaining that he did not know the status of his appeal and his attempts to communicate with respondent had gone unanswered. Respondent did not timely respond to the Notice of Investigation sent by ODC on August 4, 2014, or to the reminder letter sent on August 28, 2014. On September 30, 2014, ODC sent a subpoena to respondent requiring him to appear for an on-the-record interview on October 23, 2014, and to provide a copy of Client A's entire file.

On October 7, 2014, respondent faxed a letter to ODC stating he knew his response in the matter was overdue and that he would provide a response the next day. However, respondent did not provide a response until October 22, 2014. In the response, he indicated he had twice sent an Affidavit of Indigency to Client A but Client A failed to return it.[1] Respondent stated he would visit Client A at the Department of Corrections the following week to review the case with him and ensure Client A had everything he needed from respondent's file. Respondent did not file a signed verification with his response, he did not appear for the October

---

[1] The Chief Appellate Defender's letter stated respondent need only submit the completed Affidavit of Indigency on behalf of Client A if respondent had been retained. As noted above, respondent was appointed.

24, 2014, interview, and he did not comply with the subpoena requiring he provide Client A's file.

In the meantime, on August 1, 2014, the Court of Appeals had ordered respondent to provide proof within ten days that he had ordered the trial transcript or that he had responded to the Chief Appellate Defender's letter. Respondent did not respond to the letter. On December 30, 2014, the Chief Judge of the Court of Appeals issued an order relieving respondent from representing Client A in the appeal, requesting the Division of Appellate Defense screen Client A's case, and directing the Clerk of Court to forward the order to ODC. The order cited several Rules of Professional Conduct.

On March 2, 2015, respondent emailed ODC and stated he had been involuntarily committed for substance abuse issues. Upon petition by ODC, the Court issued an order placing respondent on interim suspension and transferring him to incapacity inactive status on March 6, 2015. *Id.*

Respondent was released from the rehabilitation facility on March 9, 2015. On March 12, 2015, respondent telephoned ODC to state he would soon be responding to its request for information.

On April 17, 2015, ODC issued a subpoena to respondent for financial records. To date, respondent has not complied with this subpoena.

On September 25, 2015, respondent voluntarily submitted to an on-the-record interview with ODC. During the interview, respondent indicated he did not respond to the Chief Appellate Defender's letter because, at the time, he had a serious cocaine addiction and was suffering from severe depression and bi-polar disorder. Respondent stated he was diagnosed with these problems during his rehabilitation stay in March 2015. He admitted he had had a serious drug problem for several years.[2]

Respondent admits that, by his conduct in connection with his representation of Client A, he violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonableness and diligence in representing a client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for

---

[2] According to the Agreement, respondent is not currently in any treatment or counseling program.

information); Rule 3.2 (lawyer shall make efforts to expedite litigation consistent with interests of client); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

## Matter II

Respondent represented Client B in an automobile accident case. Client B sought treatment from Dr. Rodney Arnold, a chiropractor. On January 23, 2013, respondent sent Dr. Arnold a letter of protection stating he would make direct payment to Dr. Arnold from the proceeds received from settlement.

On August 6, 2014, Client B told Dr. Arnold that his case had settled eight months earlier and he thought his medical bills had been paid by respondent. After several unsuccessful attempts were made to contact respondent, Dr. Arnold filed a complaint with ODC on August 29, 2014.

Respondent did not timely respond to the Notice of Investigation sent by ODC on September 3, 2014. On September 30, 2014, ODC sent a subpoena to respondent requiring him to appear for an on-the-record interview on October 23, 2014, and to provide a copy of the client file. On October 7, 2014, respondent faxed a letter to ODC stating he knew his response was overdue and that he would provide a response the next day. Respondent did not provide a response until October 22, 2014, but failed to include a signed verification. He did not appear for the scheduled interview. On December 9, 2014, respondent faxed Client B's file to ODC.

In his response, Respondent admitted he failed to protect Dr. Arnold's interests. He stated the settlement funds went directly to his client and not through his trust account. Respondent requested sixty days in which to reimburse Dr. Arnold.

At an interview in September 2015, respondent admitted misconduct in this matter. With regard to the settlement funds, respondent clarified that he deposited the money from the settlement into his trust account then used the funds to buy cocaine. He explained he had another case that he believed would settle for a significant amount of money and he intended to reimburse the Client B ledger when that happened. Respondent stated that Client B received the proceeds from the settlement, but that he failed to pay Dr. Arnold.

Respondent admits that, by his conduct in connection with his representation of Client B, he violated the following provisions of the Rules of Professional

Conduct, Rule 407, SCACR:  Rule 1.3 (lawyer shall act with reasonableness and diligence in representing a client); Rule 1.15 (lawyer shall hold property of third person that is in lawyer's possession in connection with a representation separate from lawyer's own property; lawyer shall promptly deliver to third person any funds third person entitled to receive); Rule 4.4 (in representing client, lawyer shall not use means that have no substantial purpose other than to burden third person); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

## Matter III

Respondent represented Client C in a breach of contract action against a defendant. On April 18, 2013, the special referee signed an order granting judgment in favor of Client C for $17,500 plus costs and attorney's fees.  The order was filed in the Horry County Clerk of Court's Office on May 14, 2013.

On February 4, 2014, respondent called Client C's president to relay an offer from the defendant to settle the judgment for $15,000 to be paid within three weeks. The president agreed to the offer.

On February 14, 2014, a Satisfaction of Judgment signed by respondent was filed in Horry County.  The satisfaction indicated the judgment had been paid.  Client C's president was not informed of the filing of the Satisfaction of Judgment and he did not receive the settlement funds.

Several times during March of 2014, Client C's president called and emailed respondent asking if the defendant had paid the settlement.  On March 19, 2014, respondent told the president he would have the money by the following week.

In May 2014 and for the next six months, Client C's president attempted to reach respondent to inquire about the payment.  Respondent refused to communicate with Client C's president.

In February 2015, Client C hired another attorney ("New Attorney") to assist with the collection of the judgment from the defendant.  New Attorney discovered that the judgment was marked satisfied and had been signed by respondent.  On February 12, 2015, New Attorney left a voicemail for respondent inquiring about the judgment.  New Attorney also contacted the defendant's attorney to find out what he knew about the judgment.

Respondent did not return New Attorney's telephone call, but sent an email to Client C's president on February 13, 2015. He apologized for the delay and stated he now had the matter resolved and would get the money to him within ten to fourteen days.

On February 16, 2015, the defendant's attorney informed New Attorney that the defendant had paid the judgment in February 2014. The defendant's attorney forwarded a copy of the cashier's check to New Attorney. The copy showed the check was issued by a bank on February 7, 2014, on behalf of the defendant to "[respondent] attorney for [Client C]." The defendant's attorney also told New Attorney that respondent had personally picked up the check and signed for it on February 14, 2014.

New Attorney informed Client C's president. Client C's president was shocked to learn that respondent had received payment of $15,000 and that the judgment had been satisfied. Respondent did not remit payment to Client C. On February 20, 2015, New Attorney filed a complaint with ODC.

Respondent did not respond to the Notice of Investigation, Notice to Appear, and Subpoena for Client's C's file and trust account records sent by ODC on February 20, 2015. At the September 25, 2015, interview, respondent admitted the conduct described above and stated he retained the money in his trust account and, over time, removed the funds to purchase drugs. He further admitted he signed the Satisfaction of Judgment and misappropriated the settlement funds.

Respondent admits that, by his conduct in connection with his representation of Client C, he violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for information); Rule 1.15 (lawyer shall hold property of client in lawyer's possession in connection with a representation separate from lawyer's own property; upon receiving funds which client has an interest, lawyer shall promptly notify client and shall promptly deliver to client any funds client entitled to receive); Rule 3.3 (lawyer shall not knowingly make false statement of fact to tribunal); Rule 8.4(b) (it is professional misconduct for lawyer to commit criminal act that reflects adversely on lawyer's honesty, trustworthiness or fitness as lawyer in other respects); Rule 8.4(c) (it is professional misconduct for lawyer to commit criminal act involving moral turpitude); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or

misrepresentation); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice).

## Matter IV

On December 1, 2014, Client D retained respondent to represent her on a DUI charge. Client D made three payments of $200 each to respondent. When respondent was suspended on March 6, 2015, he had not completed any work for Client D; he did not refund any money to her.

Respondent did not respond to the Notice of Investigation dated August 6, 2015, or to a reminder letter from ODC sent on August 31, 2015. During the September 25, 2015, interview, respondent stated he started work on Client D's file but was suspended and did not contact Client D.

Respondent admits that, by his conduct in connection with his representation of Client D, he violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonableness and diligence in representing a client); Rule 1.16 (upon termination of representation, lawyer shall refund fee that has not been earned); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice)

## Matter V

Client E retained respondent for representation on drug charges stemming from his arrest on December 19, 2014. On January 3, 2015, the mother of Client E's children paid respondent $1,000 for the representation. She made two more payments of $500 each, one on January 20, 2015, and the second on February 6, 2015, for a total of $2,000.

Respondent visited Client E in the detention center on one occasion. He did not file any discovery motions and did not conduct an investigation on Client E's behalf. Respondent did not file a notice of appearance on behalf of Client E.

When he was initially booked into the detention center, Client E filed an Affidavit of Indigency. On February 17, 2015, a local contract public defender was appointed to represent Client E. The public defender filed discovery motions the same day.

Client E did not tell the public defender that he had hired and paid respondent. The public defender did not know another attorney represented respondent. She had no communication with respondent. The public defender negotiated a favorable plea deal for Client E and he pled guilty on August 14, 2015.

Client E filed a complaint with ODC on December 14, 2015, alleging respondent did not do the work he was hired to do and did not earn the fee paid to him. Respondent did not respond to the Notice of Investigation sent on December 23, 2015.

Respondent admits that, by his conduct in connection with his representation of Client E, he violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonableness and diligence in representing a client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for information); Rule 3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with interests of client); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice)

Respondent further agrees that, in connection with all of the matters discussed above, his communication and cooperation with ODC has been sporadic since the first disciplinary matter was opened in July 2014. Respondent admits his failure to cooperate violates the following provision of the Rules of Professional Conduct, Rule 407, SCACR: Rule 8.1(b) (in connection with disciplinary matter, lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority).

### Additional Matters

During his September 25, 2015, interview, respondent admitted to three additional matters of misconduct that were not the subject of disciplinary complaints. It is believed that the three clients discussed below are unaware of respondent's handling of their settlement proceeds.

Respondent represented Client F in an automobile accident case. Respondent agreed to pay the physical therapist's bill from the settlement proceeds. The case settled and respondent disbursed Client F's portion of the proceeds to Client F but failed to pay Indigo Therapy Specialists for Client F's treatment. The bill totals $3,133.92.

Respondent admits he used the money from Client F's settlement proceeds to purchase drugs. He further admits he did not maintain an adequate client file and did not maintain financial records as required by Rule 417, SCACR.

Respondent represented Client G in an automobile accident case. Client G received a litigation loan from Covered Bridge Capital, LLC, as an advance on her proceeds. Respondent admitted he was obligated to reimburse the loan from the settlement proceeds, but he did not reimburse the loan company as he used the money to purchase drugs.

Respondent also admits he failed to maintain an adequate file, thus, no disbursement sheet is available and the details of the loan are unknown. In addition, respondent failed to maintain trust account records in this matter as required by Rule 417, SCACR.

Respondent represented Client H in an automobile accident case. After the case settled, Client H received her proceeds and respondent maintained $5,000 in his trust account to negotiate and pay Client H's medical bills. Respondent used the money to buy drugs and did not pay the medical bills. Further, respondent failed to maintain trust account records for this matter as required by Rule 417, SCACR.

Client H's file, provided to ODC by the Receiver, contains a list of medical providers and amounts owed. Respondent failed to pay providers a total of $4,605.49.

Respondent admits that, by his conduct in connection with the representation of Client F, Client G, and Client H, he violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (lawyer shall act with reasonableness and diligence in representing client); Rule 1.4 (lawyer shall keep client reasonably informed about status of matter and promptly comply with reasonable requests for information); Rule 1.15 (lawyer shall hold property of third persons in lawyer's possession in connection with a representation separate from lawyer's own property; upon receiving funds which third person has an interest, lawyer shall promptly notify third person and promptly deliver to third person any funds third person entitled to receive); Rule 4.4 (in representing client, lawyer shall not use means that have no substantial purpose other than to burden third person); Rule 8.4(b) (it is professional misconduct for lawyer to commit criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); Rule 8.4(d) (it is professional misconduct for lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e)

(it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice). In addition, respondent admits he violated the recordkeeping provisions of Rule 417, SCACR.

Finally, in addition to his admitted violations of the Rules of Professional Conduct specifically referenced in each matter discussed above, respondent agrees that his misconduct constitutes grounds for discipline pursuant to the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR:  Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct); Rule 7(a)(3) (it shall be ground for discipline for lawyer to knowingly fail to respond to lawyer demand from disciplinary counsel); Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute administration of justice or to bring courts or legal professions into disrepute and demonstrating unfitness to practice law); Rule 7(a)(6) (it shall be ground for discipline for lawyer to violate Oath of Office taken upon admission to practice law in South Carolina); and Rule 7(a)(7) (it shall be ground for discipline for lawyer to willfully violate valid court order).

## Conclusion

We accept the Agreement for Discipline by Consent and disbar respondent from the practice of law in this state, retroactively to March 6, 2015, the date of his interim suspension.  *Id.*  Within thirty (30) days of the date of this opinion, respondent shall enter into a payment plan with the Commission on Lawyer Conduct (the Commission) to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission.  Further, within thirty (30) days of the date of this opinion, respondent shall enter into a payment plan to pay restitution as follows:

1. $2,736.00 to Dr. Rodney Arnold;

2. $15,000.00 to the President of Client C;

3. $600.00 to Client D;

4. $2,000 to the individual who paid fees on behalf of Client E;

5. $3,133.92 to Indigo Therapy Specialists;

6. $2,519.59 to Covered Bridge Capital, LLC;

7. a total of $4,605.49 to medical providers on behalf of Client H as specified in Exhibit 1 to the Addendum to Agreement; and

8. respondent shall fully reimburse the Lawyers' Fund for Client Protection for any and all amounts paid on his behalf.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

**PLEICONES, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur. FEW, J., not participating.**